CARLOS WILLIAM REDDING, a/k/a WILLIAM
CARLOS REDDING *v.* STATE OF MARYLAND

[No. 593, September Term, 1969.]

*Decided January 4, 1971.*

The cause was submitted to ANDERSON, MORTON, and MOYLAN, JJ.

*Roland Walker*, with whom was *Richard S. Kahn* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, State's Attorney for Anne Arundel County,* and *H. Chester Goudy, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Carlos William Redding, was convicted in the Circuit Court for Anne Arundel County by a jury, presided over by Judge Matthew S. Evans, for two charges of robbery with a deadly weapon.

On appeal he raises two issues:

(1) That he was prejudiced by an unlawful pre-trial identification, evidence of which went to the jury, and

(2) That the trial court abused its discretion in not granting him a continuance to secure the testimony of a witness about whom the jury made inquiry.

The second contention can be disposed of quickly. At the end of two days' testimony, after both sides had rested their cases, but before closing arguments to the jury were made, the jurors passed written questions to the trial judge who read them to counsel at a bench conference. Several jurors wanted to know why the appellant's girlfriend did not appear to testify since the appellant was supposedly with her when the robbery took place. The appellant moved to reopen the defense and continue the case so that the girlfriend, who was then residing some two hundred miles from the courtroom, could be summonsed to appear on the following day. The court, in its discretion, declined to reopen the case. As this Court said in *Hainesworth v. State,* 9 Md. App. 31, 36:

> "We have consistently held, however, that in order to show an abuse of that discretion it is incumbent upon an accused who seeks such continuance to show that the testimony of the absent witness was competent and material; that the case could not be properly tried without such evidence; that he had made diligent and appropriate efforts to procure the witness; and that he had reasonable expectation of procuring the attendance of the witness in court within some reasonable time. *Nichols v. State,* 6 Md. App. 644; *Clark v. State,* 6 Md. App. 91. The circumstances of each particular case must be looked at to ascertain whether the lower court's action amounted to an abuse of discretion. *Walter v. State,* 4 Md. App. 373."

Under circumstances where the missing witness could easily have been summonsed by the appellant during the course of the trial; where her testimony as an alibi witness would have been cumulative to that of the appellant, the appellant's mother and the mother of the

604

missing witness; and where the case was ready to go to the jury, we cannot say that the trial judge abused his discretion in not reopening the case.

The first contention dealing with the propriety of both in-court and pre-trial identifications serves well to illustrate the at-times tortuous substantive and procedural labyrinths through which trials must now wend in the wake of the *Wade-Gilbert-Stovall* triology.[1]

Since all the pre-trial confrontations and in-court identifications in this case occurred after June 12, 1967, the day on which the decisions in the *Wade* cases were rendered, the exclusionary rules fashioned by those cases are here applicable. *Smith and Samuels v. State,* 6 Md. App. 59, 65.

The robbery victims, Dean Zimmerman and Robert Cato, were both reliability engineers from the Kennedy Space Center in Florida. On March 8, 1968, they were both in Annapolis to assist in the preparation of a reliability course, and were staying temporarily in the same room at the Charterhouse Motel in Anne Arundel County. At approximately 2:30 a.m., Zimmerman was returning to the motel when he was approached by a masked gunman who stuck a gun in his back and asked for his wallet, which contained $7.00 in cash. The gunman then ordered Zimmerman to Zimmerman's motel room. The light in the room was on and Cato was sleeping. The gunman awakened Cato and asked him for his wallet, which contained $27.00 in cash. The gunman was wearing black rubber gloves and a mask similar to a ski cap or hood over his head. After he was in the room for some period of time, he took off both his mask and the rubber gloves. He left his mask off for approximately ten minutes, but put both the mask and the gloves on again before leaving the motel room. After reporting the robbery, the two victims on the next day returned to Florida.

When the gunman left the motel room he did not notice that the rubber tip of one of the index fingers had

---

1. *United States v. Wade,* 388 U. S. 218, *Gilbert v. California,* 388 U. S. 263, *Stovall v. Denno,* 388 U. S. 293.

become detached and that that tip was inadvertently left in the room. When the appellant was later arrested at his home, a pair of rubber gloves were recovered. The tip of the index finger of one of the gloves was missing. The tip recovered from the site of the robbery matched up perfectly with the remainder of the gloves found in the appellant's home.

On March 29, 1968, the State troopers investigating the robbery sent to each of the victims in Florida a folder-type booklet containing eight photographs. A photograph of the appellant was included in the set of eight. Zimmerman made a positive identification of the appellant by picking out his photograph and sent the booklet of photographs, with the appropriate notation, back to the State police by registered mail. Cato, on the other hand, could not make an identification, although he studied the group of photographs on a number of occasions for four days before returning them to the State police.

In all identification situations, we must now ask the double-barrelled question:

(1) For a confrontation occurring after June 12, 1967, did the procedure offend the Sixth Amendment right-to-counsel protection (applied to the states through the Fourteenth Amendment) as guaranteed by *Wade, supra,* and *Gilbert, supra?* and

(2) Even if there was no violation of the Sixth Amendment right to counsel, did the procedure, under the totality of the circumstances, offend the due process clause of the Fourteenth Amendment generally by being "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", as proscribed by *Stovall v. Denno, supra?*

The photographic viewings by mail in this case offended neither protection. There is no requirement under *Wade* and *Gilbert* that counsel be present for a photographic viewing, *Baldwin v. State,* 5 Md. App. 22; *Barnes v. State,* 5 Md. App. 144; and *Simmons v. United States,* 390 U. S. 377. No violence was done therefore to the Sixth Amendment right to counsel. Nor was there any

evidence to suggest in any way that the photographic viewings were impermissibly suggestive. The burden, of course, is on the appellant to show, *prima facie*, that they were. *Smith and Samuels v. State, supra,* 68. There was no such showing here. No violence was done therefore to the due process clause.

On April 26, 1968, the victims returned to Annapolis. Mr. Zimmerman attended a juvenile waiver hearing, at which time he confronted the appellant in open court. No question is raised about that confrontation and there is nothing to suggest that it was improper. Mr. Cato did not attend that hearing since he had not as of that time made an identification of the appellant. Both victims were scheduled to return to Florida that very afternoon.

The case came to trial on November 13, 1968. Mr. Zimmerman made an identification of the appellant in open court. In addition to the in-court identification, Mr. Zimmerman testified as to his earlier selection of the photograph of the appellant from the group of eight mailed to him in Florida. This testimony as to the prior extrajudicial identification served both to corroborate and bolster his in-court identification, *Judy v. State,* 218 Md. 168, 174, and as substantive evidence of the appellant's guilt, *Johnson v. State,* 237 Md. 283; *Proctor v. State,* 223 Md. 394; *Basoff v. State,* 208 Md. 643; *Smith and Samuels v. State, supra; Wilkens v. State,* 5 Md. App. 8; and *Crumb v. State,* 1 Md. App. 98. No question is raised as to the propriety of either the in-court identification or the extrajudicial identification made by Zimmerman.

The troublesome questions arise over the extrajudicial identification and the subsequent (if not indeed consequent) in-court identification made of the appellant by Cato. Shortly before flying back to Florida on the afternoon of April 26, 1968, Cato viewed a police-arranged lineup and picked the appellant out therefrom as the man who had robbed him at the Charterhouse Motel.

There is no question but that the appellant had the right to the assistance of counsel at his lineup on April

26, unless he affirmatively waived that right. The court below held that he did so waive the right. In a case such as this involving a clear Sixth Amendment claim, it is not enough for us to ask whether the court below had some evidence on which it could base its finding of a voluntary, knowing and intelligent waiver but rather "[w]hen constitutional rights turn on the resolution of a factual dispute we are duty bound to make an independent examination of the evidence in the record." *Brookhart v. Janis,* 384 U. S. 1, 4, n. 4; *Gardner v. State,* 10 Md. App. 233, 245. In making our constitutionally mandated independent determination, we conclude that the appellant did not make an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst,* 304 U. S. 458.

The appellant's hearing on the question of the juvenile court's waiving jurisdiction in his case took place on the morning of April 26. He was at that time represented by attorney Roland Walker. It was proffered by the State that at the conclusion of that morning hearing, the State's Attorney for Anne Arundel County informed Mr. Walker that the appellant would be placed in the lineup later that afternoon. The proffer went on to state that Mr. Walker replied that he was tied up on other business and could not be present. Mr. Walker indicated that he had no recollection of such a conversation one way or the other. In any event, it is clear that the appellant was never asked to waive his right to counsel at a lineup at that time when he still had the benefit of Mr. Walker's advice. At the hearing on the legality of the lineup, out of the presence of the jury, the appellant testified that he was advised by Mr. Walker not to participate in any lineup without Mr. Walker being present with him. He testified further that when he was informed later that afternoon that a lineup would take place, he asked the police officers if his lawyer would be present and received the assurance from them that his lawyer would be there. He testified that at a later time when it was obvious that his lawyer was not present, he was told by an unidentified policeman that

his lawyer had called and said that it would be "okay to go ahead with the lineup" in the absence of the lawyer. The appellant, nevertheless, remained adamant that he would not participate in a lineup in the absence of his lawyer. He was later presented by the police with a waiver of counsel form to be signed. He at first refused to sign it. He was then, according to his testimony, informed that if he did not sign the waiver, he would be handcuffed and forced to stand in the lineup in any event. At that point he agreed to sign it because, according to his testimony, he would "stand a better chance probably then, you know, if I go out there without any handcuffs on".

The police officers denied threatening the appellant with handcuffing. They did not, however, contest the fact that they had never asked the appellant to sign a waiver while he still had the benefit of Mr. Walker's advice that morning nor the fact that they clearly understood from Mr. Walker that he did not wish his client to be placed in a lineup in his absence. It is equally clear that the police were under some compulsion to hold the lineup that afternoon because of the scheduled return to Florida by the witness Cato. It also throws some light on the state of mind of the police that Trooper Thomas testified that the police were prepared to place handcuffs on the appellant and force him to stand in the lineup if he did not sign the waiver, although the trooper did testify that this intention was not communicated to the appellant. At one point Trooper Thomas was asked "Alright, when you say we were prepared to handcuff him, what do you mean by that?" and he replied "I mean that we were going to have the lineup and if it required taking him out there with an officer with him we would have done this, as well, with the other persons in the lineup to get the lineup completed." The appellant, we may add, was seventeen years of age.

The appellant's signature on the waiver form is, of course, some evidence of waiver but is by no means dispositive of the question. On our independent review of

all of the circumstances, we hold that the appellant here did not voluntarily, knowingly and intelligently waive his right to the assistance of counsel at the April 26 lineup. *Johnson v. Zerbst, supra; Joyner v. State,* 7 Md. App. 692, 697.

Nor do we find that there was any implicit waiver from the failure of Mr. Walker to be present despite having been notified of the scheduled lineup. He received notification only several hours before the lineup was to take place. The lineup was in Anne Arundel County and Mr. Walker's office is in Baltimore. We do not reach the question of what the situation would be if a lawyer consistently and purposefully refused to make himself available to attend scheduled lineups of which he had reasonable notice. Such is not the situation here. It may well be that the exigent circumstances with which the police were faced because of the imminent return to Florida of the witness Cato compelled them to go forward with a lineup even in the absence of Mr. Walker. As this Court pointed out in *Joyner v. State, supra,* the State could have provided substitute counsel in a case where a postponement would have been prejudicial to the State. In a situation not significantly different from the one at bar, we said in *Joyner, supra,* pp. 697-698:

> "We have no difficulty here in finding that the evidence before the lower court was not sufficient for it to determine that the appellant waived his right to counsel at the lineup. The police apparently proceeded under the theory that if the appellant was informed of his right to the presence of counsel and that if a lawyer desired by the appellant was notified that a lineup was to be held this was all that was required. But they knew that the appellant did not want to appear in the lineup without the presence of counsel and that the appellant could not obtain the presence of counsel at the lineup at the time it was scheduled. In the circumstances, their proceeding to conduct the lineup when they did

was not in compliance with the *Wade* require-ments. At the least, they should have postponed the lineup for a reasonable time to make pos-sible the appearance of a lawyer for the appel-lant or, perhaps, if such postponement would in fact have been prejudicial to the State, provided a substitute counsel. As the presence of counsel was a requisite to the conduct of the lineup, as counsel was not present when the lineup was conducted, and as the appellant did not waive his right to counsel, we hold that the confrontation at the lineup of the appellant by the identify-ing witnesses was illegal."

Having held that the April 26 lineup was illegal, we hold that it was error for the State to have introduced evidence of that lineup identification at the trial. *Gilbert v. California, supra,* at 272-274; *Smith and Samuels v. State, supra,* at 65.

Similarly, we hold that the in-court identification by the witness Cato would be error in the absence of a show-ing by the State "by clear and convincing evidence" that it was not come at by an exploitation of the primary il-legality but had an "independent source" of its own. *Wade v. United States, supra,* at 240-242; *Smith and Samuels v. State, supra,* at 65. In this case there was no such showing.

It remains for us, therefore, to attempt to measure, as we must, the impact of the error upon the trial. That the erroneous admission of evidence of an improper identi-fication may, under appropriate circumstances, fall into the limbo of harmless error is well settled.

This Court held in *Smith and Samuels v. State, supra,* at 65:

"3) The admission of evidence, to be excluded under 1) [an in-court identification not shown to be free of the taint of the illegal pre-trial con-frontation] and 2) [the tainted pre-trial con-frontation itself] is prejudicial error unless, in

> any event, its introduction was harmless error beyond a reasonable doubt, applying *Chapman v. State of California,* 386 U. S. 18. *Wade* at 242; *Gilbert* at 274."

The harmless error rule enunciated by *Chapman v. California, supra,* and elaborated by *Harrington v. California,* 395 U. S. 250, has frequently been applied by this Court. *Ham, Lee, Bailey and Cole v. State,* 7 Md. App. 474; *Richardson and Thomas v. State,* 7 Md. App. 334; *Grice v. State,* 2 Md. App. 482. *Harrington* made clear that we must consider the impact of the evidence admitted in error and the magnitude of the other evidence of guilt.

In the subtle calculus of differentiating harmful from harmless error, the watchword is relativity. One tainted identification measured against one untainted identification might well amount to prejudice. Where as here, however, the error-free side of the balance contains not simply the strong and well-substantiated identification of Zimmerman but also the damaging and unexplained matching of the severed index fingertip of a glove found at the robbery scene with the rest of the rubber glove recovered from the appellant's home, the additional identification by Cato was, we feel, of minimal cumulative impact. It was, we hold, error but, in the context of this case, harmless error beyond a reasonable doubt.

*Judgments affirmed.*