MULLIE D'ANDRE CRENSHAW, a/k/a D'ANDRE
THEODORE CRENSHAW v. STATE
OF MARYLAND

[No. 131, September Term, 1971.]

*Decided November 12, 1971.*

The cause was argued before ANDERSON, MOYLAN and GILBERT, JJ.

*D. Warren Donohue,* with whom was *Douglas R. Taylor* on the brief, for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, David M. Williams, Acting State's Attorney for Kent County,* and *Andrew L. Sonner, Deputy State's Attorney for Montgomery County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Appellant, Mullie D'Andre Crenshaw, also known as D'Andre Theodore Crenshaw, was convicted of rape, robbery with a deadly weapon, perverted sex practices, and breaking and entering a dwelling house with intent to steal, in a jury trial in Kent County. He was sentenced to life imprisonment for the rape. The other sentences were suspended generally. From the judgment of the Circuit Court of Kent County, Crenshaw appeals.

Appellant, through counsel, presents two questions in this appeal:

"1. Was the testimony of the complaining witness concerning the photographic lineup inadmissible by reason of the fact that the photographic lineup took place after the appellant was arrested for these offenses and there was no attorney present on behalf of the accused?

2. If the said evidence is inadmissible, is the appellant entitled to a new trial?"

The testimony reveals that the prosecutrix was in her home in Montgomery County, Maryland, on the morning of April 14, 1968. Also present in the house were the prosecutrix' two daughters, ages 3 years, and 18 months, respectively. The prosecutrix went to the basement of her home for a moment and when she returned to the kitchen she discovered a man (later identified as appellant) who had gained entrance to the house by forcing a window screen in the family room. The window had been left open in order to air out the room. The prosecutrix said, "I came back into the kitchen; I saw Caro-

lyn, the one who is almost four, and a man was holding her in his arms with one hand over her mouth and one hand with a knife at her stomach and her pants were down, she was wearing slacks. She was trying to scream, but I couldn't hear her." The prosecutrix stated that she screamed and then said, "Please leave my children alone, please; I'll give you anything; please don't hurt my children." The intruder then had the prosecutrix place her children in their bedroom and he directed the prosecutrix to her bedroom. Under threat of injury to her children, she submitted to his demands that she perform fellatio on him, and then appellant proceeded to have sexual intercourse with her. Prior to the sex acts, a sock was tied around the prosecutrix' eyes in an attempt to blindfold her, but she said she "could see a little bit." The prosecutrix estimated the time she was with her ravisher to be nine or ten minutes. Before leaving the premises, the rapist took some $30.00 from the prosecutrix and then cut the telephone wire connecting the downstairs phone. The prosecutrix used the extension located upstairs and called the police. Fingerprints and a palm print were taken from the screen that had been forced.

Approximately 18 months after the attack on the prosecutrix, she was shown 5 photographs by police from Montgomery County. Some time following the attack upon her, the prosecutrix, with her family, moved from Maryland to New York. It was in New York that the prosecutrix identified the photograph of appellant. She said that Sergeant Mosley of the Montgomery County police stated to her, "Here are some photographs we would like you to look through, please." According to the prosecutrix, the police did not in any way indicate that there was someone in the photographs who they wished her to identify. She explained, "They gave me the first one, and I said no, and they gave me another and I said no, and they gave me the third one, and I said that was him." She then said, "I don't have to see any more pictures." At the trial, the prosecutrix identified the appellant as her attacker. On cross-examination she ad-

mitted that she thought the attacker was one of the persons depicted in the photographs the police took to New York because of the fact that they had journeyed there to show her the pictures. Previously she had viewed other photographs, but none of them were of the culprit. When asked if the viewing of the photographs aided her in-court identification, the prosecutrix responded, "I think — in fact, I'm sure that I could have recognized him without ever having seen any photographs at all, with or without a goatee, or with or without a mustache, * * * and if it were another two and a half years, the same thing would be true."

The finger print expert testified that the prints recovered from the screen were those of the appellant. He identified 51 points of similarity between the latent prints found on the screen and those of the appellant. The expert opined that the mathematical probability of finding a person other than appellant with finger prints bearing 12 points of similarity was 999 billion to one.

The record is not clear as to when appellant was apprehended for the offenses charged in this case. We shall assume that he was in custody at the time of the photographic identification so as to place him in a posture most favorable to him in our subsequent discussion.

Appellant relies principally upon *United States v. Zeiler,* 427 F. 2d 1305 (3rd Cir. 1970). In that case Zeiler had been arrested and charged with a series of bank robberies. Counsel was appointed to defend him. Prior to the lineup, attended by counsel, the F.B.I. had privately confronted each eyewitness with a series of photographs for identification. Each of the witnesses was exhibited eight photographs (five of various individuals and three of Zeiler). Those of the other five were police "mug shots"; each "mug shot" depicted full face and profile, and bore police markings. In contrast, the pictures of Zeiler were ordinary snapshots, a difference which could easily have impressed the viewers, who were all aware that the person thought to be the "Commuter Bandit" had only recently been apprehended. Even more suggestive was the

fact that only Zeiler was pictured wearing eyeglasses, as had the perpetrator of the robberies. Thus, the attention of each witness was focused on Zeiler's picture. The court extended the rule in *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), to "apply equally to photographic identification conducted after the defendant was in custody." The court said:

> "In addition, the constitutional safeguards that *Wade* guaranteed for lineups may be completely nullified if the police are able privately to confront witnesses prior to the lineup with suggestive photographs."
>
>         \* \* \*
>
> "Even absent the issue of the right to counsel at this critical showing of Zeiler's picture to the witnesses, such photographic identification might well be deemed 'so unnecessarily suggestive and conducive to irreparable mistaken identification,' and so pointless for any purpose other than suggestion, as to violate due process."

In his oral argument of this case, appellant requested that we overrule our holding in *Smith and Samuels v. State,* 6 Md. App. 59 (1969), and adopt *Zeiler.* In *Smith and Samuels,* Judge Orth, speaking for this Court, held that *Wade, supra,* and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967), are not applicable to identifications made from photographs. It is stated at page 66:

> "A viewing of photographs by a witness is not rendered illegal by the absence of counsel for the accused, as there is no constitutional requirement that counsel be then present."

See also *Williams v. State,* 11 Md. App. 607 (1971); *Redding v. State,* 10 Md. App. 601 (1971). We are not persuaded by *Zeiler.*

*United States v. Serio,* 440 F. 2d 827 (6th Cir. 1971), held that a bank robber, who was in custody and who

had counsel at his lineup did not have his Sixth Amendment Constitutional rights violated by a photographic identification held out of the presence of the accused and his counsel. Judge Kent, speaking for the Court said:

"We are not persuaded by the Court's opinion in *Zeiler* and find that all other Circuits which have considered the issue have resolved against the claims of this appellant. The language of Judge Friendly in *United States v. Bennett,* 409 F. 2d 888 (2nd Cir. 1969) cert. denied, 396 U. S. 852, 90 S. Ct. 113, 24 L. Ed. 2d 101, reh. denied, 396 U. S. 949, 90 S. Ct. 376, 24 L. Ed. 2d 256, meets with our approval and effectively disposes of the appellant's claims in this respect. As stated by Judge Friendly in 409 F. 2d 888, at 889, 900:

'Against this, to require that defense counsel be allowed or appointed to attend out-of-court proceedings where the defendant himself is not present would press the Sixth Amendment beyond any previous boundary. None of the classical analyses of the assistance to be given by counsel, Justice Sutherland's in *Powell v. Alabama,* 287 U. S. 45, 68-69, 53 S. Ct. 55, 77 L. Ed. 158 (1932), and Justice Black's in *Johnson v. Zerbst,* supra, 304 U. S. [458] at 462-463, 58 S. Ct. 1019, [82 L. Ed. 1461] and *Gideon v. Wainwright,* supra, 372 U. S. [335] at 344-345, 83 S. Ct. 792, [9 L. Ed. 2d 799], suggests that counsel must be present when the prosecution is interrogating witnesses in the defendant's absence even when, as here, the defendant is under arrest; counsel is rather to be provided to prevent the defendant himself from falling into traps devised by a lawyer on the other side and to see to it that all available defenses are proffered. Many other aspects of the prosecution's interviews with a victim or a witness to

a crime afford just as much opportunity for undue suggestion as the display of photographs; so, too, do the defense's interviews, notably with alibi witnesses. Although in *Simmons* [Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. 1247] the Court noted that the right to counsel was not involved, since the photographs were shown to the witnesses before any arrests had been made, Mr. Justice Harlan's opinion contains language bearing on this problem, 390 U. S. at 384, 88 S. Ct. 967, at 971:' "

* * *

"And in *Wade* itself, the Court listed as one of the ways the prosecution might attempt to show that a witness' identification of defendant at trial was not the fruit of a lineup held in the absence of counsel a showing of 'the identification by picture of the defendant prior to the lineup,' 388 U. S. at 241, 87 S. Ct. 1936 at 1940, which clearly implies that such identifications are permissible even when defendant's counsel is not present. Since we thus refuse to project United States v. Wade and its siblings into new ground, see *McGee v. United States,* 402 F. 2d 434, 436 (10 Cir. 1968), we have no occasion to consider the effect or validity of 18 U.S.C. § 3502, added by § 701 of the Crime Control Act of 1968."

The Fifth Circuit, in *United States v. Ballard,* 423 F. 2d 127 (1970), cited with approval Judge Friendly's opinion in *Bennett, supra,* and refused to extend *Wade* and *Gilbert, supra,* saying:

"* * * that *Gilbert* and *Wade*—neither through *Simmons* nor outside *Simmons* — require the counsel for an accused be present at the time of any out-of-court photographic identification, regardless of whether the accused is in custody or not."

*United States v. Roth,* 430 F. 2d 1137 (2nd Cir. 1970), cited *Ballard* with approval and *Zeiler* to the contrary.

The Supreme Court of California rejected the reasoning of *Zeiler* in *People v. Lawrence,* 93 Cal. Rptr. 204, 481 P. 2d 212 (1971), by a four to three decision. The majority held that a kidnap victim's pre-trial photographic identification of a suspect after his arrest is not within the ambit of *Wade* and *Gilbert.* The Court of Appeals of the State of Washington in *State v. Searcy,* 4 Wash. App. 860, 484 P. 2d 417 (1971), considered photographic identification of a defendant made while he was in custody for the offense of armed robbery and assault. Searcy contended and the State admitted that counsel was not present during the photographic identification. The court refused to extend *Wade* to out-of-court identification based on photographs. It said that it had in *State v. Grays,* 1 Wash. App. 422, 424, 463 P. 2d 182, 183 (1969), rejected a similar contention to that of *Searcy* and quoted its holding in *Grays*:

> "* * * We know of no authority, statutory or constitutional, that requires the presence of an attorney for any potential defendant while his picture, with others, is being displayed to victims or witnesses to a crime. We are unwilling to impose any such requirement."

The overwhelming weight of authority declines to extend *Wade* and *Gilbert* to photographic identifications. In addition to the cases previously cited see: *United States v. Robinson,* 406 F. 2d 64, 67 (7th Cir. 1969) cert. denied, 395 U. S. 926, 89 S. Ct. 1783, 23 L. Ed. 2d 243, *United States v. Fowler,* 439 F. 2d 133, 134 (9th Cir. 1971), *Rech v. United States,* 410 F. 2d 1131 (10th Cir. 1969) cert. denied, 396 U. S. 970, 90 S. Ct. 457, 24 L. Ed. 2d 438, *Commonwealth v. Geraway,* 355 Mass. 433, 245 N.E.2d 423, 427-428 (1969), *McClain v. State,* 444 S.W.2d 99, 102-104 (Ark. 1969), *Stevenson v. State,* 244 So. 2d 30 (Miss. 1971), *Kain v. State,* 48 Wis. 2d 212, 179 N.W.2d 777 (1970), *People v. Martin,* 47 Ill. 2d 331,

265 N.E.2d 685 (1970), *Reed v. State*, 281 A. 2d 142, 145-146 (Del. 1971), *Denney v. State*, 277 A. 2d 682, 683 (Del. 1971), *Staten v. State*, 248 So. 2d 697 (Fla. 1971).[1]

Appellant also argues that "the possibility of error due to mistake in photographic identification is substantial." Mr. Justice Harlan, for the Supreme Court, in *Simmons v. United States*, 390 U. S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), said:

> "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eye witnesses to exonerate them through scrutiny of photographs. The danger that use of the techniques may result in convictions based on misidentification may be substantially lessened by a course of cross examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a

1. Contra: *Commonwealth v. Whiting*, 439 Pa. 205, 266 A. 2d 738, 740, *Thompson v. State*, 451 P. 2d 704, 706-707 (Nev. 1969) cert. denied, 396 U. S. 893, 90 S. Ct. 189, 24 L. Ed. 2d 170, *Cox v. State*, (Fla. App. 1969), 219 So. 2d 762, 765. The dissenting opinion by Winter, J. in *United States v. Collins*, 416 F. 2d 696, 701, (4th Cir. 1969) cert. denied, 396 U. S. 1025, 90 S. Ct. 601, 24 L. Ed. 2d 519; dissenting opinion by Winter, J. in *United States v. Marson*, 408 F. 2d 644, 653, (4th Cir. 1968) cert. denied, 393 U. S. 1124, 89 S. Ct. 996, 22 L. Ed. 2d 132, *People v. Rowell*, 14 Mich. App. 190, 165 N.W.2d 423 (1968).

> very substantial likelihood of irreparable mis-
> identification."

We cannot say, under the totality of the circumstances, that the photographic identification of appellant was impermissibly suggestive. In fact, the converse appears to be true, particularly in view of the testimony of the prosecutrix as to the manner in which the identification was held, together with her assertion that she could identify the appellant without the use of photographs.

Appellant, without the aid of counsel, presented a series of questions to this Court.

1. Appellant argues denial of "due process" because he was not allowed to cross-examine the doctor who examined the prosecutrix for evidence of rape. No doctor testified; hence, there was no cross-examination. Appellant had a right to call the doctor as a defense witness if he deemed the doctor's testimony essential. The testimony of the prosecutrix, standing alone, and, if believed, is sufficient to convict. *Williams v. State*, 11 Md. App. 350, 354 (1971).

2. Appellant claims he was denied the right to examine police officers who "would have testified" as to the result of a physical examination of the victim and the bedspread. No officer testified relative to the same. Appellant could have called the officers as defense witnesses, but did not do so. Photographs indicated the condition of the bedspread. It is difficult to ascertain what appellant means by the police officers' physical examination of the prosecutrix. We think appellant's contention is without merit.

3. and 4. Photographs of the exterior of the house, the interior of the same, the screen and window, and the bedroom, were exhibited to the prosecutrix who identified them and they were received into evidence. Appellant argues the qualifications of the photographer were never introduced. His argument is nonsensical and without merit. The photographs were described by the victim as fair and accurate representations of the scenes they

depicted. There was no need for the State to prove the qualifications of the photographer.

5. Appellant's assertion that the prosecutrix' testimony was so self-contradictory as to be unbelievable is totally devoid of merit. The fact that she may have been confused as to the date she moved from Maryland to the New York area does not vitiate her testimony under *Kucharczyk v. State*, 235 Md. 334 (1964).

6. Out of the presence of the jury a hearing was held concerning the introduction of certain photographic evidence. Defense counsel objected to the introduction of the State's Exhibits 1 through 5. Even though the court ruled them admissible, the State then declined to exhibit the same to the jury. Appellant now objects to the State's withholding of the exhibits. We perceive no error. The jury did not consider them and could not have formulated any opinion thereon. We know of no reason why, if the exhibits were thought by the appellant to be essential to his defense, he could not have demanded their production for the jury's examination.

7. Appellant next contends that the State knowingly suppressed evidence because it did not produce the doctor to testify relative to the rape, the hospital records concerning the same, the bedspread covering the bed upon which the rape occurred, or the sock which was used to blindfold the victim. The bald allegation that the State suppressed evidence is unsupported by the record. The State simply did not need the evidence which appellant thinks it should have produced. The testimony of the victim, if believed, was sufficient to convict. *Williams v. State, supra.*

8. Appellant argues that because the jurors did not answer "yes or no" to *voir dire* questions propounded by the trial judge, he was deprived of due process. The questions propounded to prospective jury members on *voir dire* were so phrased that they called for a response only if they were applicable. No objection was made to the *voir dire* examination. Defense counsel also participated in the questioning of the jury. We perceive no error.

9. and 10. Appellant states that the trial judge did not set forth his reasons when ruling on objections. There is no requirement that he do so. When objections are made, the court's ruling is reviewable on appeal. The appellant's contention is frivolous.

11. Appellant alleges that his counsel was incompetent. While our examination of the record indicates otherwise, the matter is not before us inasmuch as it was not raised below and cannot be raised for the first time on appeal. *Thompson v. State,* 6 Md. App. 50 (1969).

12. Appellant's last argument is a recapitulation of his other contentions, intertwined with an attack on the composition of the jury, and an allegation of consent by the prosecutrix. The attack on the makeup of the jury was not raised below, and is not before us. Rule 1085. To the words, "Please leave my children alone, please; I'll give you anything; please don't hurt my children," appellant attaches such consent as to preclude convictions for rape and robbery. Appellant's contention relative to consent is patently frivolous. The prosecutrix' maternal instinct for the safety of her children, and most particularly the safety of the child against whose stomach the appellant held a knife, together with his threats to harm the prosecutrix' children, constituted force and coercion, compelling the prosecutrix to submit to appellant's sexual attack. The same force and coercion was present in the robbery.

*Judgments affirmed.*