# CHARLES THEODORE COOPER *v.* STATE OF MARYLAND

[No. 201, September Term, 1971.]

*Decided January 24, 1972.*

The cause was argued before MURPHY, C. J., and ORTH and POWERS, JJ.

*Fred Warren Bennett* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph C. Sauerwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

CHARLES THEODORE COOPER, indicted for robbery with a deadly weapon,[1] pleaded not guilty in the

---

1. The indictment jointly charged Cooper and Arthur Morgan. It contained 24 counts, all for offenses arising from the holdup of a High's Store on 27 May 1970. Counts 1 through 8 related to the robbery of Olivia V. Ivy; counts 9 through 16 related to the robbery of Earline Dixon; counts 17 through 24 related to the robbery of Cheryl D. Armistead. Trial proceeded only on counts 9 through 16, the court stating: "[W]e will proceed with Nine through Sixteen, and you gentlemen, [the Assistant State's Attorney and defense counsel] can resolve counts * * * One through Eight, and Seventeen through Twenty-four at an appropriate time." At the close of the evidence offered by the State it "abandoned" all except counts nine and eleven of those being tried. The case went to the jury on those two counts.

Circuit Court for Prince George's County, and for his trial put himself upon the country as was his constitutional right. Amendment VI to the Constitution of the United States; Art. 21, Declaration of Rights, Constitution of Maryland.[2] The jury returned a verdict of guilty as to count 9 charging robbery with a deadly weapon and a sentence of 15 years was imposed.[3]

Cooper claims that the judgment must be reversed because the trial court erred:

(1) in admitting evidence of extra-judicial identifications made by photographic procedures in the absence of counsel;

(2) in receiving a photograph of him in evidence;

(3) in regard to the impeachment of him by the State;

(4) in charging the jury by:

    (a) refusing to give a requested instruction on specific intent;

    (b) failing to give *sua sponte* an instruction with respect to the probative value of impeachment evidence.

## (1)

The contention that the court erred in admitting, as a substantive part of the State's case, evidence of extra-judicial identifications of Cooper as one of the robbers by photographic viewing procedures is bottomed on the absence of counsel representing Cooper when such identifications were made. Cooper makes no claim that the viewing procedures were impermissibly suggestive. He

---

2. Trial *per patriam* or *per pais* "is also that trial by the peers of every Englishman, which, as the grand bulwark of his liberties, is secured to him by the great charter." 4 Blackstone Commentaries 349. See 9 Henry III, c. 29.

3. Morgan and Cooper were separately tried upon grant of motion for severance. A jury found Morgan guilty under the 9th Count and he was sentenced to 20 years. The judgment was affirmed on appeal. *Morgan v. State*, No. 164, September Term, 1971, filed 15 November 1971, unreported.

concedes that by this Court's opinions a viewing of photographs by a witness for the purpose of identification of an accused is not rendered illegal by absence of counsel representing him. "[T]here is no constitutional requirement that counsel be then present." *Smith and Samuels v. State,* 6 Md. App. 59, 66. We have consistently so held. *Williams v. State,* 11 Md. App. 607; *Redding v. State,* 10 Md. App. 601; *Thompson v. State,* 6 Md. App. 50; *Barnes v. State,* 5 Md. App. 144. He asks, however, that we re-examine our position in the light of *United States v. Zeiler,* 427 F. 2d 1305 (3rd Cir. 1970). We did so in *Crenshaw v. State,* 13 Md. App. 361. We were not persuaded by *Zeiler* then and we are not persuaded by it now. We found in *Crenshaw* that the overwhelming weight of authority declines to extend the principles of *United States v. Wade,* 388 U. S. 218 and *Gilbert v. California,* 388 U. S. 263 to photographic identifications. At 369-370. *Crenshaw* is dispositive of Cooper's claim. We shall not depart from our prior opinions. We hold that the lower court did not err in admitting the challenged evidence.

### (2)

The photograph of Cooper which was identified by the witnesses as that of one of the robbers was received in evidence over objection. Cooper claims that its receipt was prejudicial error because tape had been applied to the back of it to mask the signature of one of the witnesses who signed it during the identification procedure. He urges that its introduction was unnecessary as several witnesses had identified him in court and "hence the photograph had no probative value" and that "it communicated to the jury the impression that appellant had been convicted of previous offenses or that he had an arrest record." Cooper testified that he had no prior record and there was no suggestion that he did. Eight photographs were admitted in evidence, one of which was that of Cooper. Each is about 4 inches by 3 inches, in color, of the upper body and head of black males. Each

has a paper pasted on the back on which is stamped or written that it was a State's exhibit in Criminal Trial 10,317 in the Circuit Court for Prince George's County, introduced on 15 December 1970 in a case in which Cooper was the defendant. The only thing different was the exhibit number, that, ranging from 3A to 3H. The questions posed by Cooper's reasons for his claim of error were for determination in the sound discretion of the trial court. As we said in *Carroll v. State,* 11 Md. App. 412, 414: "[W]hether or not [photographs] are inflammatory, whether or not they illustrate and explain relevant matters, whether or not they are of any practical value, and whether or not they are improperly prejudicial are within the exercise of the court's discretion." See *Austin v. State,* 3 Md. App. 231, 236. We find no abuse of discretion in the facts and circumstances here.

### (3)

In *Sanders v. State,* 1 Md. App. 630 we reviewed the principles of law pertaining to the impeachment of witnesses by proof of contradictory statements. We said, at 640-641:

> "Provided a proper foundation has been laid, the credit of a witness may be impeached by showing he has made statements which contradict his testimony in respect to material facts (but not in respect to facts that are collateral, irrelevant or immaterial). *Davis v. State,* 38 Md. 15; *Joppy v. Hopkins,* 231 Md. 52, 56 and cases cited; *Kantor v. Ash,* 215 Md. 285, 290; *Mahan v. State,* 172 Md. 373, 380. To lay the foundation for such evidence, the witness must be first interrogated as to the time, place and person to whom such contradictory statements were made. *Brown v. State,* 72 Md. 468. As the Court said in *Brown* at page 475:
>
>> 'This is but fair and just to the witness, in order that he may be enabled to refresh

his recollection in regard to such statements, and afforded the opportunity of making such explanation as he may deem necessary and proper.'

"See also *O'Brien v. State,* 126 Md. 270, 285; *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 439. The witness, whether a party to the suit or not, may be cross-examined on such matters and facts, and the proper foundation having been laid, the proof of prior contradictory statements can be submitted for the consideration of the jury in estimating the credit to be given the testimony of the witness. *Leister v. State,* 136 Md. 518, 523; *Moxley v. State,* 205 Md. 507, 516-517; *Campbell, etc. v. Patton,* 227 Md. 125, 141. If in laying the foundation, the witness denies making the designated statement or states that he does not remember whether he did or did not make it, impeaching testimony can be offered. *Moxley v. State, supra,* at page 516. See also *Myers v. State,* 137 Md. 482, 490, in which it was held that it was permissible to prove that on a prior occasion the witness had admitted certain facts, although when asked about them did not deny them but said he was unable to recall them."

In *Franklin v. State,* 6 Md. App. 572, decided 23 April 1969, cert. den. Court of Appeals of Maryland, 255 Md. 741, cert. den. Supreme Court of the United States, 399 U. S. 912, we looked to the contradictory statement used to impeach. We enunciated the rule, at 579:

"If the veracity of an accused testifying in his own behalf is to be attacked by a prior inconsistent or contradictory statement made while he was undergoing a custodial interrogation, the State must affirmatively show that the statement was made after the accused had been

> fully advised of all of his rights and had effectively waived them in accordance with the standards prescribed by *Miranda* [*v. Arizona,* 384 U. S. 436].''

Although six federal Courts of Appeals and appellate courts of thirteen other states reached the same result as did we in *Franklin,* on 24 February 1971 in *Viven Harris v. New York,* 91 S. Ct. 643, a majority of the Supreme Court found that *Miranda* did not say what it appeared to say. The comments in *Miranda* relied on by us in *Franklin,* 6 Md. App. at 578, were recognized in *Harris* as able to be read ''as indicating a bar to use of an uncounseled statement for any purpose'', but were disposed of simply by the statement that ''discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling.'' 91 S. Ct. at 645. Basing its decision on *Walder v. United States,* 347 U. S. 62 (1954), the holding of the majority was that statements inadmissible against a defendant in the prosecution's case in chief because of lack of the procedural safeguards required by *Miranda* may, if its trustworthiness satisfies legal standards, be used for impeachment purposes to attack the credibility of the defendant's trial testimony. The rationale of the decision is found in the statements ''[a]ssuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief,'' 91 S. Ct. at 645, and ''[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances,'' id., at 646.

Cooper claims that the court permitted the State to impeach him by prior inconsistent statements absent an affirmative showing that the procedural safeguards of *Miranda* were met as prescribed by *Franklin.* He argues that at the time of his trial on 15 December 1970 *Franklin* was the law of this State, that he had a right to rely

on it, that he may have refused to testify in his own defense had he known the State could attack his credibility through prior inconsistent statements, and that in such circumstances *Harris* should not be given retroactive application as "injustice and inequity would result." He concludes that "the introduction into evidence of the prior inconsistent statement was prejudicial error requiring a new trial.

Our inquiry turns first to the factual premise of the contention. At the trial the victim and two eyewitnesses made positive judicial identifications of Cooper as one of three men who had committed the robbery and the State adduced that each had made an extra-judicial identification of Cooper from a viewing of photographs. A police officer arrived as the felons were leaving the store immediately after committing the robbery. Cooper was apprehended on the spot by the officer; Morgan was captured by an eyewitness after a short chase; the third man escaped. Cooper's defense was that he acted under duress. Testifying on his own behalf he admitted that on the evening of the robbery he was with Slim, the man who escaped, and Morgan, in a car driven by Slim. As they approached High's store Morgan and Slim discussed committing a robbery—"Morgan brought it up." As they were pulling up in the parking lot, Morgan said to Cooper, "Well, since he's there he might as well go ahead and do it anyway." Cooper said he "didn't want to have no part in it." As they got out of the car Morgan took a gun from under the seat. Cooper identified a gun the State had introduced as the robbery weapon as the gun Morgan had. All three walked "straight towards the store." Cooper stopped in front of the store and said to Slim that he did not want to go in. Morgan said, "Come on over to the telephone booth" and all three did so. Morgan "told me I had better go ahead and do it because he didn't care," meaning he did not care what happened because he was on drugs and could pull the trigger there and "that would be it right there." The gun at the time was inside Morgan's sweater and pants. Cooper did not

leave because he was afraid in view of what Morgan had said. Morgan and Slim went in the store and Cooper followed, "I was about two seconds behind him." Cooper stood next to the witness. A woman screamed because Morgan had grabbed $2 out of her hand. Morgan told her, "Shut up or I'll blow your head off." At Morgan's direction Cooper took a man's wallet and Mrs. Dixon's purse, and going through them extracted $20 from the purse. Slim was at the counter "getting money." Morgan was in the middle with his weapon "on just about everybody, * * * waiving it." Slim left, then Cooper, then Morgan. The police pulled up and arrested Cooper. He denied that he wanted to participate in the robbery.

During the presentation by the State of its case, after it had adduced testimony from the victim, two eyewitnesses and three police officers, it told the court at the bench that it was about "to go into" the question of a confession by Cooper to the police. The court was informed that Cooper was read his rights, signed a waiver of them and gave a statement which was not signed by him. Defense counsel objected to the confession—"I think at any rate there had to be a determination made out of the presence of the jury"—and the court said: "We will proceed to make that preliminary determination at this time." The State requested a short recess which was granted. After the recess, in the presence of the jury, the State rested its case without referring further to a confession.

Cross-examining Cooper, the State referred to his testimony that the robbery had been Morgan's idea. The prosecutor asked: "Whose idea did you tell the police it was?" Defense counsel objected. At a bench conference he said: "May it please the Court, first the State declines to use the statement that the defendant allegedly made in this case and now tries to get it in through the back door by impeachment. * * * If the State is going to try to impeach the defendant by use of a statement, I think that they ought to lay a foundation through the

officers that the statement is voluntary because if they can't use the statement in their case in chief, they can't use it for impeachment. * * * [T]hey cannot use it on cross-examination of the defendant until they show that it is voluntary and that he made the statement and that the proper *Miranda* warnings were given and that they were waived." The court overruled the objection. The State asked Cooper: "As a matter of fact, now Mr. Cooper, you told the police that it was Slim's idea, not Morgan's idea, didn't you?" Cooper said that he did not. Asked what he did tell them Cooper said that he told the officers that it was Morgan's idea. However, he explained: "At first I didn't know his name. I just said Slim. * * * I told the police that when I said Slim, I didn't know the other dude's name. He asked me which Slim I was talking about, the one that got away or the one you have, and I told him the one he has, until he told me the name was Morgan." He said he told the police about the robbery but the officer got him confused about Slim and Morgan. Asked if it was true that he told the police that it was Slim who told him to get the wallet, he said that the officer asked, "Which one Slim or Morgan?" and he said "Morgan." There was no further reference to what he told the police. No statement given by him to the police was offered.

As the State pursued the matter, it never reached the point of impeachment by a prior inconsistent statement. It was obliged to lay a foundation through interrogation of Cooper before it was entitled to show he had made prior statements with respect to material facts inconsistent with his testimony. We think the questions asked were admissible to that end. Cooper maintained that what he told the police was in substance that to which he had testified and he explained such variance as existed. The State patently was content to let the matter so remain. There were no prior statements made by Cooper to the police submitted for consideration of the jury, no proof of them was offered, and no such state-

ments were introduced. In short, the State did not in fact use prior inconsistent statements to impeach Cooper, never proceeding past an attempt to lay the proper foundation for their introduction. The contention fails by reason of its incorrect factual premise.

We leave to another time whether *Harris* is to be retroactively or prospectively applied. And we leave the many questions *Harris* poses for determination when they are properly before us.[4]

### (4)

### (a)

Cooper claims reversible error because the lower court refused to give an instruction on specific intent. It did not appear among those in a document in the record entitled "Defendant's Requested Jury Instructions." It was offered as the single exception to the charge made to the jury. It was read to the court from *Federal Jury Practice and Instructions, Civil and Criminal* by DeVitt and Blackmar, § 13.03:

"The crime charged in this case is a serious crime which requires proof of specific intent

---

4. For example, what are the legal standards which are to be satisfied by the "trustworthiness" of the evidence? Is trustworthiness synonymous with voluntariness? Must a statement used to impeach be voluntary in the sense required for its admission as part of the case in chief? See note 2 of *Harris*, at 646 in which the Court gives an example where "the voluntariness of a confession would * * * be totally irrelevant." And see *Rogers v. Richmond*, 365 U. S. 534 in which "voluntary" and "trustworthy" as to confessions seem to be distinguished. Must there be a preliminary determination by the court that the trustworthiness of the statement satisfies legal standards? If so, does the jury then have the final determination of its trustworthiness? In considering whether or not the evidence is trustworthy what bearing does the lack of compliance with the *Miranda* safeguards have on the trustworthiness of the statement in the light of the holding to the effect that the fact that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of his interrogation is a significant factor in considering the voluntariness of statements made without the ambit of *Miranda?* See *Davis v. North Carolina*, 384 U. S. 737, 740. Hopefully, when these and other questions raised by *Harris* are squarely before us the Supreme Court will have furnished some guidance.

before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government [or the State in this case] must prove that the defendant knowingly did an act which the law forbids, (or knowingly failed to do an act which the law requires,) purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

"An act or failure to act is 'knowingly' done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason."

The judge said it had adequately covered the applicable law with respect to intent in the crime of robbery in his instructions. We agree that he did.

Robbery is the larceny from the person of another by violence. *Gray v. State,* 10 Md. App. 478, 480; *Wiggins v. State,* 8 Md. App. 598, 603. See *Williams v. State,* 7 Md. App. 683. It is correct that there can be no robbery without a larcenous intent, which, of course, may be determined from the words, acts and conduct of the accused. *Midgett v. State,* 216 Md. 26, 41. So in *Midgett,* on which Cooper relies, the court held that under the evidence in that case [5] "the question of the intent of the defendant is peculiarly a jury question." It observed that on retrial "there should be a specific instruction to the jury on the question of the intent to steal." [6]

Violence to a person with an intent to steal and the larceny not consummated is not robbery but attempted robbery. It is an actual taking by violence from a person with larcenous intent that constitutes robbery.

After pointing out in the instructions that the jury had

---

5. The jury could have found that the defendant took the equipment of a police officer either to steal it or to disarm him with no intent to deprive him of it permanently.

6. That point had not been raised below and thus was not there tried and decided. The judgment was reversed for other reasons.

before it the offenses of robbery with a deadly weapon and robbery, the court discussed intent:

"Now, the Court indicates to you that intent may be defined as follows: Intent expresses mental action at its most advanced point, or as it actually accompanies an outward, corporal act which has been determined on. Intent shows the presence of the will in the act which consummates a crime. It is the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, with full liberty of action, willing and electing to do it."

The charge continued:

"Now, as to Count Eleven, the Court advises you that that is robbery. The elements of robbery are the felonious taking of goods or money from the person or presence of another by means of force or intimidation. The elements of robbery are a taking, the use of actual or constructive force, and the absence of consent on the part of the victims.

Criminal intent is an essential element of robbery, and it must be ascertained and determined from the words, acts and conduct of the accused from the evidence that you have heard here from the complaining witnesses and the officer.

Now, robbery with a deadly weapon, of course, has the same elements as robbery plus the fact that a dangerous weapon would be used.

Under the robbery statute, a dangerous weapon generally is anything used or designed to be used in destroying, defeating or injuring an enemy, or as an instrument of offensive or defensive combat.

As long as there is an intent to rob by means of a dangerous or deadly weapon shown, it is unnecessary to find an intent or ability to execute the implied threat in the event of resistance; nor need it be shown that the person assailed was actually put in fear if the means employed are calculated to instill fear in the heart and mind of a reasonable man.

Of course, another element is that the defendant took the property from the person or immediate actual possession of the complainant, and, having so taken that property, took and carried it away."

We find that the court properly instructed on every essential point of law supported by the evidence. Rule 756 b; *Malloy v. State,* 4 Md. App. 420. We observe that a factual situation comparable to *Midgett* was not existent here. On the evidence, including even his own testimony, Cooper intended to steal the money he took from Mrs. Dixon. That he may have stolen it while acting under duress is another matter. The jury was fully instructed on the law of duress and apparently to the satisfaction of Cooper for he made no objection with respect to it. Thus, unlike *Midgett,* on the evidence here, no specific instruction on intent to steal was required.

### (b)

Cooper now claims the jury should have been instructed "that the impeachment of [him] by use of a prior inconsistent statement was not probative evidence of guilt but could be used only for impeachment purposes." He cannot assign the failure to so instruct as of right because he did not object below. Rule 756 g. And in the light of our discussion under (3) *supra,* the failure was not plain error material to Cooper's rights, so we do not take cognizance of it, there being no need to correct it. Ibid.

*Judgment affirmed.*