# HERBERT WILLIAM CRAIG, JR. *v.* STATE OF MARYLAND

[No. 466, September Term, 1971.]

*Decided February 16, 1972.*

The cause was argued before THOMPSON, CARTER and GILBERT, JJ.

*Naji P. Maloof* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John C. Hancock, State's Attorney for Charles County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Herbert William Craig, Jr., appellant, was tried and convicted in a non-jury trial in the Circuit Court for Charles County of feloniously breaking a dwelling house with intent to steal the goods, chattels, monies and properties of the owners thereof.

Appellant was sentenced to a term of two years under the jurisdiction of the Department of Correctional Services.

The sole question posed by this appeal is whether or not the evidence was legally sufficient to sustain the conviction.

Testimony established that on the morning of January 25, 1971, the prosecutrix, Mrs. Hines, heard a knock at the door of her home. She walked into the bathroom to look out of the window in order to see who was at the door, and she observed two boys. She described one of the persons present at her door as having a "tan car coat on, a light brown car coat. He had some kind of white shirt on. He had light brown hair, kind of longish to the shoulder and most of it was combed to the right, straight down, straight hair." Mrs. Hines then started to walk from the bathroom to the hall, but before she reached the hall she "heard the glass break." At that point she ran into the hall and down the steps where she "saw one boy with his hand inside my door, standing in my hall, taking his hand out of the glass * * * They both turned around and ran down through my yard." Mrs. Hines "grabbed a gun and told them to stop." They complied momentarily, looked at her and then "turned around and kept on going."

In response to a question as to whether or not she could describe the person who was in the hallway, she said, "I came face-to-face with him but I can't remember his facial features. All I can remember is that he had really dark brown hair, almost black. It was hanging down over his ears, about ear length and he had a dark jacket on." The witness described the youth having the

long light brown hair as "the biggest one, he was stocky, chunky, heavy set. He looked like he might be about almost six foot tall." The young man she confronted in the hallway was "maybe five ten, a little bit taller than I was and like I said, all I can remember is the hair and jacket, I can't remember facial features."

Immediately following the flight of the two persons who had attempted to illegally gain access to her home, Mrs. Hines called the State Police.

The State attempted to use photographic identification, but the photographs were suppressed by the trial judge because they were impermissibly suggestive. See *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968) ; *Crenshaw v. State,* 13 Md. App. 361, 283 A. 2d 423 (1971) ; *Williams v. State,* 11 Md. App. 607, 275 A. 2d 522 (1971) ; *Redding v. State,* 10 Md. App. 601, 272 A. 2d 70 (1971) ; *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285 (1969). No in-court identification of the appellant was made by Mrs. Hines.

State Trooper Gawthrop was called by the State and he testified that he lived approximately one-quarter of a mile from the Hines home; that some time prior to noon on the 25th of January, 1971, he received a phone call concerning a breaking and entering in the Hines residence, and a description which he testified to be as follows : "I was advised that two white males, one or both having long hair, dark long hair, one wearing a black jacket and one wearing a brown jacket had broken into the Hines residence and had left the scene on foot." The Trooper went immediately to his front door which faced the general area, while his wife was getting his revolver and truck keys. His purpose in going to the front door was to view the area and "observe anyone on the roadway." He then got into his truck and began a search. The Trooper observed two individuals, "fitting the description * * * hitchhiking. I stopped, got out of my vehicle, they were trying to get in the right hand door." He described the two individuals as "white males, one was

somewhat bigger than the other, taller and heavier, both of them had long hair, one was wearing a brown corduroy car coat and the other was wearing a black imitation leather car coat."

The Trooper also stated that the arrest was made within a matter of minutes after he left his residence, "probably about five minutes." The area in which the arrest was made consisted of approximately three housing developments.

Trooper First Class Short arrived at the scene of the apprehension and discovered in the other youth's pocket a pair of black leather gloves with a chain wrapped around the right hand glove. The chain was a "twenty two and one-half inch choke chain."

Trooper Gawthrop identified the appellant as one of the persons arrested. There was some testimony that both the appellant and the other person apprehended had mud spots on the back of their coats, but our perusal of the record fails to establish any connection between the mud spots and the commission of the crime. But for the introduction into evidence of a photograph depicting the tire tracked rear yard of Mrs. Hines' home, there was no evidence connecting the mud spots on the back of the coats and the happening of the crime. In the photograph it appears that a driveway leading to the Hines house is muddy. The other area is grassed. Since, however, there is no testimony to show what appears in the photograph to be mud, is actually mud, we attach no significance to the mud spots on the appellant's coat and note that in a rural area such as here present the mud spots could have come from any one of a number of places. This is particularly so in view of testimony from Mrs. Hines that it had rained the night before the crime.

Appellant's motion for judgment of acquittal at the end of the State's case was denied and the appellant then rested and renewed his motion. The trial judge denied the motion and found appellant guilty, saying,

"We don't have any reasonable doubt that

this defendant here is one of the two parties whom Mrs. Hines saw at her property on the day of January 25th, 1971 and that they fled or he fled, when he was seen by the property owner, is sufficient indication that he was there and that the breaking occurred with intent to steal something from the home.

"I think all of the cases say that flight is an indication of guilty intent."

We cannot agree with the trial judge's findings that Mrs. Hines saw the appellant on her property and that he fled. Such is not the evidence. There can be no dispute but that Mrs. Hines saw two young men on her property and that they fled, but that does not mean that Mrs. Hines saw the appellant on her property. This is so inasmuch as no identification was made by her of the appellant. Similarly, the fact that the appellant was apprehended approximately one-half mile from the scene of the breaking and entering does not of itself indicate that he was the one who fled from the Hines property after a confrontation with Mrs. Hines.

We must reverse the judgment because the evidence is legally insufficient to sustain the conviction. The weight of the evidence and the credibility of witnesses are matters within the province of the trial judge and will not be disturbed on appeal to this Court unless the trial judge is clearly erroneous. Rule 1086. *Williams v. State,* 11 Md. App. 350, 274 A. 2d 403 (1971) ; *Reid v. State,* 10 Md. App. 6, 267 A. 2d 332 (1970) ; *David v. State,* 1 Md. App. 666, 232 A. 2d 553 (1967). Here, we find that the trial judge was clearly erroneous.

We note that Mrs. Hines described the youth that she saw by the door of her home as having light brown hair, long to the shoulder and wearing a tan or light brown jacket. The description upon which the Trooper said he acted was that one of the youths was wearing a brown coat and the other a black coat and one or both had long dark hair. Our careful examination of the record and of

the testimony of Mrs. Hines fails to indicate that any such description was given by her to the police. In fact, her testimony was emphatic concerning the color of the coat of each of the individuals and of the hair of both individuals as to the length and shade. Her inability to recognize "facial features" and the lack of any identification of the appellant by Mrs. Hines is here, clearly fatal. She had the opportunity to observe the persons who gained unlawful entry into her home. The description supplied by her is at odds with that upon which the police acted.

We think that the finger of suspicion may well point toward the appellant, but suspicion is not the basis upon which a conviction may be predicated. There must be evidence which, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt. *Coward v. State,* 10 Md. App. 127, 268 A. 2d 508 (1970) ; *Frankis v. State,* 11 Md. App. 534, 275 A. 2d 532 (1971) ; *Folk v. State,* 11 Md. App. 508, 275 A. 2d 184 (1971).

At a retrial the State may be able to supply the here missing ingredients and for that reason we shall remand this matter to the trial court with instructions that if the State can forthwith convince him preliminarily that it has such additional probative evidence for use at another trial, the matter shall be set for rehearing. However, if the State shall be unable to convince the trial judge preliminarily that it has such evidence, then the judge is instructed to enter a judgment of acquittal.

> *Judgment vacated.*
> *Case remanded for further*
> *proceedings in accordance*
> *with this opinion.*