**Allen D. POLK, Appellant–Defendant Below,**

v.

**STATE of Indiana, Appellee–Plaintiff Below.**

**No. 49A04–9012–CR–609.**

Court of Appeals of Indiana, Third District.

Sept. 18, 1991.

---

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

Allen Polk appeals his convictions of robbery,[1] a Class B felony, and confinement,[2] a Class B felony. He raises the following three issues for our review:

I. Whether the evidence was sufficient to support his conviction.

II. Whether the trial court erred in allowing evidence of the victim's out-of-court and in-court identifications.

III. Whether the trial court erred in allowing evidence of other robber-ies which had occurred in the area where Gonzalez was robbed.

We affirm.

## I.

### *Sufficiency of the Evidence*

Polk argues the evidence was insufficient to sustain his conviction. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. We look to the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom, to see if there is substantial evidence of probative value to support the verdict. *Clark v. State* (1990), Ind., 562 N.E.2d 11, 16.

### A. *Robbery*

Ind.Code 35–42–5–1 provides:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

Thus, in order to obtain a conviction for robbery, the State must prove that the taking of property was effectuated 1) by using or threatening to use force; or 2) by putting the other person in fear. *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 507.

Polk argues that he was an innocent bystander in the alley where the robbery occurred. The evidence most favorable to the State reveals that on January 23, 1990, Hector Gonzalez was leaving the Athletic Club at 350 N. Meridian, Indianapolis, Indiana, at about 7:15 p.m. As he was walking to his car which was parked in a

---

1. Ind.Code 35–42–5–1 (1988).

2. IC 35–42–3–3 (Supp.1990).

parking garage behind the Club, two men approached him. One of the men pointed a small gun at Gonzalez and told Gonzalez to give him his wallet. Gonzalez gave the man his wallet and the other man ripped a chain with a crucifix off of Gonzalez's neck. Gonzalez identified Polk as one of his assailants both from a photo array and at trial. Polk's arrest resulted from the photo array identification. At the time of the arrest, Polk was wearing the gold chain and crucifix.

■■ It is well settled that a conviction may be sustained by the testimony of a single eyewitness without corroboration. *Greenlee v. State* (1984), Ind., 463 N.E.2d 1096, 1097. Here, Gonzalez testified that Polk was one of his assailants and unequivocally identified him in the photo array and at trial. In addition, Gonzalez's testimony was corroborated by the fact that Polk was wearing Gonzalez's crucifix when he was arrested. Thus, the evidence was sufficient to sustain the conviction.

### B. *Confinement*

While Polk generally argues that the evidence was insufficient to sustain the confinement conviction, the dissent opines that the conviction for confinement merged with that for robbery. Our discussion encompasses both the general challenge to sufficiency and the merger issue.

■ The elements of the offense of confinement are set out in Indiana Code 35–42–3–3 (Supp.1990):

A person who knowingly or intentionally:

(1) confines another person without the other person's consent; or

(2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement, a Class D felony.

However, the offense is a Class C felony if the other person is less than fourteen (14) years of age and is not the person's child, and a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person.

The merger concern outlined by the dissent was recently addressed by our supreme court in *Wethington v. State, supra.* There, the court noted that where the acts alleged by the State to substantiate the robbery charge are coextensive with the acts alleged to support the confinement charge, a conviction on both offenses may not stand.

Polk was charged in two counts as follows:

did knowingly, while armed with a deadly weapon, to wit: A handgun, take from the person or presence of Hector Gonzalez property: to wit: wallet and contents and a gold chain, by putting Hector Gonzalez in fear or by using or threatening the use of force on Hector Gonzalez

and:

while armed with a deadly weapon, to-wit: A HANDGUN unlawfully and knowingly confin[ed] Hector Gonzalez without his consent by forcing Hector Gonzalez to remain in an alley in the 400 block of North Illinois Street....

Record, p. 2.

In support of those charges, the State elicited the following testimony from Gonzalez at trial:

Q: Okay. What happened after that, Mr. Gonzalez?

A: At that time I, uh, I was pretty much paralyzed, I didn't know what to do so *I turned around as they stated, now, we don't [want] you to move, uh, we don't want you to do anything* so I slowly turned around because I was trying to avoid a conflict in terms of knowing where they were going and so on and how they departed the scene.

Q: And did—at some point did the two individuals leave?

A: Oh, yes. As I was turning they started running. Which direction they went I am not sure. I am sure they headed somewhere north because the alley goes north-south. As soon as they disappeared I ran back to the Athletic Club, pretty much screaming and yelling, asking

for assistance and that is when I entered the Club and made the telephone call to the police.

Record, pp. 63–64. The trial judge could reasonably have inferred from this testimony that *after Polk and his confederate completed the robbery* (the taking of Gonzalez's valuables by force), one or both of the robbers instructed Gonzalez to turn around and not to move, i.e. to remain in the alley.

■ The force used to coerce Gonzalez to remain in the alley—verbal instructions to turn around and not to move—was different from the force used to effectuate the robbery—verbal instructions to turn over his valuables. Though both instances of force were punctuated by the presence of the handgun, they were two distinct and separate criminal acts.

Our supreme court limited the extent of its holding in *Wethington, supra,* as follows:

The holding of this case is limited to instances such as this one where criminal confinement is charged along with another crime, the commission of which inherently involves a restraint on the victim's liberty, and where the language of the charging instruments makes no distinction between the factual basis for the confinement charge and the facts necessary to the proof of an element of the other crime.

*Id.,* 560 N.E.2d at 508. Here, the language of the charging information reveals that the State alleged two different factual bases for the confinement and robbery charges. In support of the robbery charge, the State alleged that Polk put Gonzalez in fear or threatened the use of force on Gonzalez. In support of the confinement charge, the State alleged that Polk forced Gonzalez to remain in an alley. The State elicited substantial evidence of probative value to sustain a conviction on both counts at trial.

## II.

### *Identification*

Polk argues that the trial court erred in admitting into evidence both the photographic array from which Gonzalez identified Polk and Gonzalez's in-court identification of Polk. Polk argues that the out-of-court identification was defective because before the identification procedure, Gonzalez knew that the police had a robbery suspect or had arrested someone prior to viewing the photo array. Polk admits in his brief that he did not object to the in-court identification, but nonetheless argues that the in-court identification was tainted by the out-of-court identification.

■ The standard governing admissibility of an out-of-court identification is whether, under the totality of the circumstances, the identification procedure was so impermissibly suggestive that it gives rise to a very substantial likelihood of misidentification. *Parsley v. State* (1990), Ind., 557 N.E.2d 1331, 1333.

■ We agree with Polk that our supreme court has condemned the practice of suggesting to a witness viewing a photo array that a photo of the one charged with the alleged crime is included in the array. *Sawyer v. State* (1973), 260 Ind. 597, 298 N.E.2d 440, 444. Here, however, there is no evidence that the investigating officer, Detective Breen, told Gonzalez that a suspect's picture was included in the arrays.[3] In fact, Breen told Gonzalez that he was to pick a photo out only if he was sure that the photo was of one of the men involved in the robbery. Gonzalez unequivocally identified Polk from the second array which he was shown.

■ Polk also argues the procedure was tainted because Gonzalez knew the police had a suspect in the robbery. The record reveals that although Breen had questioned Polk before showing the photo array to Gonzalez, Polk had not yet been arrested. Regardless of whether Gonzalez had been told that Polk had been arrested or that the police had a suspect, our supreme court has

---

**3.** Detective Breen did tell Gonzalez that a suspect had been arrested, but not until some time after he was shown the photo arrays. Record, pp. 65–67; 82.

held that an out-of-court identification is not impermissibly suggestive when the witness knows that a suspect has been arrested:

> It is inevitable that a witness may know that the police have a suspect when he is asked to view a 'line up' or limited photographic array. The purpose of such identification procedures is to have such suspicions confirmed or refuted, and the procedures cannot be criticized so long as they are conducive to witness independence.

*Gambill v. State* (1982), Ind., 436 N.E.2d 301, 303. Viewing the totality of the circumstances surrounding the photo identification, we cannot agree with Polk that the identification procedures were impermissibly suggestive. Thus, the trial court did not err in allowing evidence of the out-of-court identification.

Polk next argues that the in-court identification was tainted by the defective out-of-court identification and should not have been permitted at trial. He acknowledges that he did not object to the in-court identification at trial. Failure to object at trial constituted a waiver of the issue. *Madden v. State* (1990), Ind., 549 N.E.2d 1030, 1032. However, he argues we should review this issue as fundamental error.

Notwithstanding the waiver, if there is a factual basis for the in-court identification of an accused independent of a pre-trial confrontation, reversal will not be predicated upon the allegation that the in-court identification was tainted by an unduly suggestive pre-trial confrontation. *Vanway v. State* (1989), Ind., 541 N.E.2d 523, 529. Assuming *arguendo* that the pretrial confrontation would have been unduly suggestive (our disposition of the issue above indicates otherwise), we would then examine the circumstances surrounding this in-court identification. In evaluating the likelihood of misidentification, the five factors to be considered are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.*

Gonzalez testified that Polk and another assailant came toward him with a gun. Although it was dark in the alley, there was enough light from a light fixture in the alley that he could see Polk clearly and could describe both men to the police. Despite the brevity of the encounter—less than two minutes—Polk did come close enough to Gonzalez to take his wallet from him and to rip a chain off of his neck. When Gonzalez viewed the photographic array shortly after the incident, as well as when he was asked to identify Polk at trial, he indicated that he was sure Polk was one of the two robbers. We find no error in the trial court's failure to suppress the in-court identification.

### III.

### *Evidence of Other Robberies*

Polk argues the trial court erred in permitting the police officers to testify about robberies which had occurred in the area of the Athletic Club and the consensual search of Polk's girlfriend's apartment, where a gun was recovered. He argues this evidence was irrelevant because it was not material in proving an element of the charged crimes.

Officer Danner testified that he was called to Wishard Hospital on January 24, 1990, to investigate the report of a self-inflicted wound. At the hospital, he spoke with Polk. Polk had shot himself as he was walking up the steps to an apartment at 401 N. Illinois. He had the gun in his pocket and his finger on the trigger as he was walking up the steps. He tripped and the gun went off. Danner said he called Detective Breen to the hospital because Danner *knew that several armed robberies had occurred recently in the area of 401 N. Illinois* and because there had been a report of shots fired at this location about an hour before Danner was called to the hospital. Danner and Breen asked Polk where the gun was, and Polk replied it was at his girlfriend's apartment. Polk

took the policemen there and permitted them to search for the gun.

 At trial, Polk argued that Danner's testimony should not be permitted because Polk was in custody at the time the police officers searched the girlfriend's apartment and there was no indication the search was consensual. On appeal, Polk argues that the testimony should not have been permitted because evidence of the other robberies was not relevant to prove he committed the robbery and it unfairly prejudiced him. Thus, his argument on appeal is obviously different than the one raised at trial and is therefore waived. *Hartwell v. State* (1974), 162 Ind.App. 366, 321 N.E.2d 222.

Moreover, the "trial court is accorded wide latitude in ruling on the relevancy of evidence." *Armstrong v. State* (1982), Ind., 429 N.E.2d 647. The evidence that several robberies had occurred in the area of Polk's girlfriend's apartment in no way implies Polk was involved in any of the other robberies. Clearly, the fact that a crime occurred in a high-crime area or that a defendant was arrested in the area does not indicate that one particular defendant committed all the crimes in a particular area. Here, the testimony merely shows how Detective Breen became involved with investigating Polk as a suspect.

 Finally, Polk's trial was a bench trial. In proceedings tried before a judge, it is generally presumed that the court renders its decision solely on the basis of relevant and probative evidence. *Coleman v. State* (1990), Ind., 558 N.E.2d 1059, 1062, *reh'g denied*. We find no error in the admission of the police officers' testimony.

Affirmed.

CHEZEM, J., concurs.

MILLER, J., dissents and files separate opinion.

MILLER, Judge, dissenting.

This dissenting judge has never known of a robber who, after robbing his victim, puts his gun in his pocket, shakes hands with the victim and informs him he is free to go (probably to call the police). It is logical to assume that any robber worth his salt would, in attempting to escape, tell the victim not to move until he is away from the area. The escape is just as much a part of the successful completion of the crime as taking money from the victim. The legislature understood this when it passed the robbery statute and fixed the presumptive sentence for its violation.

Yet, the majority holds that a robber who tells the victim not to move while he tries to escape commits not only robbery but confinement as well. Under this reasoning, a robber who held up a candy store and who, after taking the money and without saying anything, backs up twenty feet to the door with his gun trained on the victim, could be convicted of confinement after the robbery. I cannot agree with this position. Here, the victim testified that when he turned around, Polk and his cohort started running and told the victim not to move as they ran away. This cannot, in my opinion, support a conviction of confinement in addition to the robbery conviction. I would therefore vacate Polk's confinement conviction.