Jimmie **AUSTIN**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A04–9201–CR–1.

Court of Appeals of Indiana, Fourth District.

Nov. 18, 1992.

Transfer Denied Dec. 31, 1992.

---

Walter E. Bravard, Jr., Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, Jimmie Austin (Defendant), appeals from his convictions for attempted robbery, robbery, and confinement. We affirm.

### Issues

Defendant presents two (2) issues for our review, which we restate as follows:

I. Whether the identification procedures were tainted or unduly suggestive, and thereby inadmissible at trial.

II. Whether Defendant's convictions for two (2) counts of attempted robbery, five (5) counts of robbery, and seven (7) counts of confinement were supported by sufficient evidence.

III. Whether the convictions for attempted robbery and robbery, coupled with the confinement convictions constituted double jeopardy.

### Facts and Procedural History

On February 6, 1990, Dora Johnson, with at least six other friends and family members, gathered in her apartment. The six other people included Lillian Ferguson, Mary Morris, Walter Culpepper, Charles Dattes, Tolbert Sholder, and Louise Shaw. All of these individuals were over fifty years of age. During this gathering, De-

fendant and another man entered the apartment uninvited, and one of these two men threw Charles Dattes to the floor and stated, "we gonna rob you all." Defendant instructed all of the individuals to remain still, and Defendant stated that they would be hurt if they moved. Defendant and his accomplice represented that they had a gun.

After Defendant stood in the middle of the room for a moment, he approached each individual separately and requested that they give him their money. Each of the individuals gave any money, purse, or wallet that they possessed to Defendant when he approached them. Each of the individuals testified that they were scared to move and did not feel free to move at any time during the ordeal. They were also instructed by Defendant not to come out of the apartment until after he and his accomplice had left.

Dora Johnson later selected Defendant from a lineup as the man who robbed her and her friends. She also positively identified Defendant at trial as the person who leaned over her mother's walker and took money during the robbery. In addition, Louise Shaw selected Defendant's photograph from a photo array shown to her a few days after the robbery. Louise Shaw also testified that she was certain and very comfortable with her selection in the photo array.

Defendant was charged with five (5) counts of Robbery, two (2) counts of Attempted Robbery, and seven (7) counts of confinement. The jury convicted him of all counts on January 25, 1991.

### Discussion and Decision

#### I.

■ Defendant argues that the identification procedures used to convict him were manufactured, tainted, and unduly suggestive. Defendant further argues that these procedures amounted to a miscarriage of justice and should not have been admitted. We disagree.

■ First, Defendant did not object to the identification evidence at his trial. The admission of allegedly tainted identification evidence does not constitute fundamental error. *Helton v. State* (1989), Ind., 539 N.E.2d 956. Defendant has thus waived consideration of any error resulting from admission of the identification evidence by his failure to object at trial. *Id.*

■ Nonetheless, the identification evidence was properly admitted. Louise Shaw identified Defendant in a photo array a few days after the robbery. The standard governing admissibility of out-of-court identification is whether the identification procedure, under the totality of circumstances, was impermissibly and unnecessarily suggestive that it gave rise to a very substantial likelihood of misidentification. *Brooks v. State* (1990), Ind., 560 N.E.2d 49, 55, *reh. denied.*

Here, the investigating officer went to Shaw's home a few days after the robbery and showed her six photographs, which included photos of six individuals similar in age and skin color to Defendant, as well as Defendant. The officer separated her from anyone's influence as he showed her the photographs, and the officer told Shaw that the photographs did not necessarily contain the person whom he suspected had robbed her and the other victims. Louise Shaw immediately picked out Defendant as the individual who had committed the robbery.

Defendant suggests that the inability of Shaw to identify him in a lineup prior to trial taints her prior identification of him in a photo array. However, Defendant's trial and the lineup were conducted over eleven months after the robbery. Shaw testified that she was more sure of her identification at the photo array than she was in the later lineup. We hold the trial court properly admitted Shaw's identification of Defendant because it was obtained by proper procedures.

■ In addition, the identification evidence of Dora Johnson was properly admitted. Although Dora Johnson selected Defendant from the investigating officer's photo array a few days after the robbery, she could not make a positive identification from the photo array because she did not

have her glasses. However, she did later identify Defendant at a lineup prior to trial and in court. Our standard of review was set forth in *Brooks, supra:*

> Where a trial court has admitted evidence of a pretrial identification of the defendant by a witness and an in-court identification of the defendant by the same witness, a reviewing court must determine whether, under the totality of the circumstances, "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification" that the defendant was denied due process of law under the Fourteenth Amendment.

> The reviewing court must first determine whether the out-of-court procedure was conducted in "such a fashion as to lead the witness to make a mistaken identification." The court focuses its inquiry on the facts surrounding the pretrial procedure, such as the manner and form in which the police asked the witness to attempt the identification and the witness's interpretation of their directives, and whether officials singled out the defendant as the suspect they most had in mind either by their attitude displayed toward appellant, or by the physical constitution of the photo array or corporeal lineup. If the reviewing court finds that the totality of circumstances surrounding the pre-trial confrontation were [sic] not impermissibly and unnecessarily suggestive, both the evidence of the out-of-court identification and the in-court identification were properly admitted by the trial court, and there is no need to proceed further.

[Citations omitted.]

Here, the lineup conducted immediately prior to the trial contained individuals selected by the Defendant and similar to Defendant in age and skin color. The witnesses were separated and not allowed to discuss their choices in the lineup. Dora Johnson selected Defendant from the lineup as the one who had robbed her and the others. She later identified Defendant in court as the one who had robbed them. Defendant failed to show that any of these procedures were impermissibly suggestive.

Moreover, a basis for the in-court identification existed independent of the pretrial procedures for the out-of-court identification. Johnson was confronted by Defendant in her apartment. Her apartment was lighted appropriately; she had ample opportunity to perceive Defendant while he was in her apartment; and Johnson looked directly at Defendant within a short distance during the robbery. Dora Johnson's in-court identification was also properly admitted independent of any alleged improprieties associated with the out-of-court identification procedures. *See, e.g., Brooks,* 560 N.E.2d at 55, n. 1.

## II.

■ Defendant next argues that there was insufficient evidence to convict him of his crimes. Defendant states that he was denied a presumption of innocence and that this denial rose to the level of fundamental error meriting the reversal of his convictions. We disagree.

■ When reviewing a defendant's challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *Jones v. State* (1992), Ind., 589 N.E.2d 241. We look only to the evidence, and the reasonable inferences flowing therefrom, which support the verdict, and if there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Id.*

■ The evidence most favorable to the verdict here shows that two victims identified Defendant as one of the men who robbed them on the evening of February 6, 1990. Dora Johnson identified Defendant as the one who entered her apartment, who instructed everyone to remain still, who robbed each of the victims, and who stood over her mother's walker as her mother was robbed. Johnson identified Defendant at a lineup and in court without contradiction or inconsistency. A conviction may be sustained on the uncorroborated testimony of a single witness. *Henley v. State* (1988), Ind., 522 N.E.2d 376. Sufficient evidence of probative value existed to support the guilty verdicts.

## III.

■ Finally, Defendant argues his convictions for attempted robbery and robbery violated the federal and state double jeopardy prohibitions when coupled with his convictions for confinement. More specifically, Defendant argues that the confinement of which he was found guilty was the confinement necessary to commit the robberies. Defendant asserts that his rights have been violated under Article 1, § 14 of the Indiana Constitution and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Once again, we disagree.

Uninvited, Defendant entered the apartment where the victims were gathered. Before robbing each of them separately, Defendant told everyone not to move and stood in the middle of the room. He approached each victim individually. The victims did not feel free to move at any time prior to or subsequent to being approached by Defendant for fear of being harmed. Defendant instructed all of them not to follow him out of the apartment.

To determine whether offenses are the same under the Double Jeopardy Clause, the following standard has been established:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306. This test or standard was further developed in *Brown v. Ohio* (1977), 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187:

This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes ...' [Citations omitted.]

Indiana adopted the *Blockburger* and *Brown* tests in *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, 897:

The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, not whether the offenses spring from the same act or operative circumstances.

*See also, Scrougham v. State* (1990), Ind. App., 564 N.E.2d 542, *trans. denied.*

The definition and elements of Robbery are set forth in Indiana Code 35-42-5-1. The statute provides that the State must prove at trial that Defendant "knowingly or intentionally t[ook] property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear." A conviction for confinement requires, under I.C. 35-42-3-3, that the State must prove Defendant "knowingly or intentionally: (1) confine[d] another person without his consent." Thus, a review of the pertinent statutes reveals that each crime contains an element which the other does not.

However, in addition, we must examine the manner in which the offenses are charged when analyzing a double jeopardy question. *Id.; Wethington v. State* (1990), Ind., 560 N.E.2d 496. In *Wethington*, the pertinent part of the Information contained a particularized description which was identical in both the confinement count and the robbery count. The language of the charging instruments in *Wethington* made it evident that the factual basis underlying the confinement charge was the same as the "by force" element necessary to support the charge of robbery. *Id.* at 507. The confinement was the force by which the defendant in *Wethington* effectuated the robbery. *Id.*

Here, our facts are different from those in *Wethington*. The language of the charging instruments does not use the same factual basis to support the confinement charges and the respective elements of the robbery charges. Also, after entering the apartment, Defendant waited a moment before robbing each of the guests.

Then, the victims were not allowed to move at any time during their encounter with Defendant. Their personal liberties were interfered with prior to and immediately after being robbed by Defendant. Once the victims were approached and relieved of their valuables by Defendant, they were not free to move, much less leave the apartment. Finally, when he left, Defendant instructed them not to follow him out of the apartment. The law is well established that "[a]ny confinement of the victim beyond that inherent in the force used to effectuate the robbery constitutes a violation of the confinement statute apart from the violation inherent in the offense of robbery." *Id.* at 508 (citing *Ryle v. State* (1990), Ind.App., 549 N.E.2d 81, 84–85). Contrary to the characterization of the dissent, we do not establish an approach-taking-retreat analysis of robbery and confinement. Instead, we focus on the language that *"any* confinement beyond that" necessary to effectuate the robbery is a separate offense. To hold that the confinement of the others while one is being robbed is inherent in the force used to effectuate the robbery smacks in the face of good public policy and potentially ignores the liberties of the others affected by the robbery. If a robber approaches a group of people, but only robs one while instructing the others not to move, he has confined the others in addition to robbing the one. Also, we note that we recently held that "[i]f each offense stands alone because it arises from a separate felonious act perpetrated by the attacker during the time he and his victim are together, the attacker's double jeopardy rights are not violated if he is convicted of those two or more offenses." *Wright v. State* (1992), Ind.App., 590 N.E.2d 650, 652.

Defendant's actions supported the confinement convictions independent of the robbery convictions. Confinement of the victims existed beyond that inherent in the force necessary to effectuate the robbery. We hold that no double jeopardy violations existed.

Affirmed.

SHARPNACK, C.J., concurs.

MILLER, J., dissents with opinion.

MILLER, Judge, dissenting.

I respectfully dissent on Issue III. The robbery and attempted robbery convictions coupled with the confinement convictions violate the federal and state protections against double jeopardy. Here, the force necessary for the commission of the robbery was coexistent with the confinement of the victims in the apartment. I would remand to the trial court for resentencing and order the court to vacate the convictions for confinement.

Austin entered the apartment and declared his intentions to rob the occupants. Accordingly, he assumed control of the occupants, took items of value, and escaped. The majority upholds seven counts of confinement on the grounds that "[the victims'] personal liberties were interfered with prior to and immediately after being *robbed* by Defendant," At 174, (emphasis added).[1] This statement, in light of the

---

1. The majority strains to dissect the robbery into three distinct periods of time—1) the approach, 2) the physical taking of the property, and 3) the retreat—in order to uphold the confinement convictions. It seems to me that no matter how one slices it, we are concerned with one event—a robbery. Dividing the event as the majority suggests supports twenty-one (21) counts of confinement of which seven (7) merge into the crime of robbery. The majority supports its determination that the defendant was properly convicted of seven (7) counts of confinement by stating that the victims were constrained both before and after the robbery. That rationale supports fourteen (14) counts of confinement.

Hypothetically, and under the majority's artificial "before and after confinement theory," a robber could be charged with one count of Robbery, a class B felony (armed with a deadly weapon), plus two counts of Confinement, class B felonies (armed with a deadly weapon), for the approach and retreat from a single victim. The maximum sentence for a class B robbery is twenty (20) years. The class B confinement convictions would enhance this maximum by an additional forty (40) years for a total of sixty (60) years—and violate the clear intent of the legislature that the maximum penalty for armed robbery should be twenty (20) years. "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing a greater punishment than the legislature intended." *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535.

facts of this case, indicates a fundamental misunderstanding of what constitutes the offense of robbery. Robbery is more than the mere act of taking. Robbery is a taking from the victim or his presence by force or threat of force. In order to obtain a conviction for robbery, the State must prove that the taking of property was effectuated by: 1) using or threatening to use force; or 2) putting the other person in fear. Ind.Code 35–42–5–1. Robbery is larceny by violence. *Cooper v. State* (1972), 14 Md.App. 106, 286 A.2d 579. The offense of robbery is an aggravated form of theft. *Thomas v. State* (1959), 168 Tex.Crim. 225, 324 S.W.2d 869.

It is true that the victim's liberties were interfered with before and after *the actual taking.* However, the interference with the victims' liberties was that only necessary to commit the robbery. If we were to hold otherwise, then force which would constrain a victim's liberty at any other time except the period contemporaneous with the actual taking of the money or property would constitute the crime of confinement.

After the taking, Austin instructed the occupants to remain in the apartment until he was gone. The escape was part and parcel to the accomplishment of a successful robbery. In *People v. Estes* (1983), 147 Cal.App.3d 23, 194 Cal.Rptr. 909, the court observed:

A robbery is not completed at the moment the robber obtains possession of the stolen property. The crime of robbery includes the elements of asportation, the robbers escape with the loot

being considered as important as gaining possession of the property.... The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.... The crime is not divisible into a series of separate acts. Defendant's guilt is not to be weighed at each step of the robbery as it unfolds. The events constituting the crime of robbery, although they may extend over large distances and may take some time to complete, are linked by a single-mindedness of purpose.

As I stated in my dissent in *Polk v. State* (1991), Ind.App., 578 N.E.2d 687, 693 (where the majority held that a robbery was *completed* when the valuables were taken), "[i]t is logical to assume any robber worth his salt would, in attempting to escape, tell his victim not to move until he is away from the area. The escape is just as much of a part of the successful completion of the crime as taking the money from the victim." Robbery "includes the element of asportation, and this taking away is a transaction which continues as the perpetrators depart from the place where the property was seized." *People v. Beghtel* (1958), 164 Cal.App.2d 294, 330 P.2d 444, *aff'd.* 239 Cal.App.2d 692, 49 Cal.Rptr. 235 (Robbery conviction for driver of get-a-way car upheld).[2]

I do not disagree with the majority's statement, "If a robber approaches a group of people, but only robs one while instructing the others not to move, he has confined the others in addition to robbing the one." At 174.[3] I believe this is a correct state-

---

**2.** I also observe that the jury was given incorrect instructions with regard to the confinement charges. They were told that a class D confinement was an included offense of the class B confinement (deadly weapon) charge. However, they were instructed that a class C robbery was the *only* included offense of armed robbery, although class D confinement is an inherently included offense. Consequently, the jury's general verdicts of confinement of each of the victims could have been based upon the confinements which merged with the robberies and attempted robberies and not, under the majority's before and after theory, upon the confinements before and after the robbery.

**3.** The majority's statement conflicts with its "before and after theory" language which it also relies upon to uphold the confinement convictions. In a typical robbery, under the majority's "after theory," the robber is not just guilty of robbing Victim 1 but, rather, guilty of robbing and *confining* Victim 1 when he holds the victim at bay while escaping. As to the other members of the group present during the robbery of Victim 1, according to the "after theory" in this case and in *Polk, supra*, since the physical taking of the money ends the robbery, the robber is guilty of two confinements, not just one, against the others; i.e., confinement during the robbery of Victim 1 and confinement as the robber makes his retreat.

ment of the law; because if a robber confronts two victims, robs Victim 1, and holds Victim 2 at bay, he is guilty of the robbery of Victim 1 (the confinement merges into the robbery), and the confinement of Victim 2 (the confinement of Victim 2 has no robbery in which to merge).

As noted earlier, robbery is defined as taking property from another person or from the presence of another person by either the use or threat of force or by putting the victim in fear. I.C. 35–42–5–1. Thus, in a situation where two people or more are robbed, the robber must hold Victim 2 at bay while taking valuables from Victim 1 in order to keep Victim 2 accessible for a robbery. If the robber ignores Victim 2 who then wanders off, he cannot rob Victim 2 because that victim is no longer in the presence of the robber. It stretches logic and good common sense to state that holding a person at bay in these circumstances is not necessary to commit the robbery. Perhaps the confusion by the majority is caused by the fact that when two people or more are robbed, the force is different than if one person is robbed—but it's still the force necessary to get the job done.

I believe my position in this case is fully supported by *Bowling v. State* (1990), Ind., 560 N.E.2d 658; *Stwalley v. State* (1989), Ind., 534 N.E.2d 229; *Kizer v. State* (1986), Ind., 488 N.E.2d 704. In analyzing these cases, Judge Conover stated in *Wright v. State* (1992), Ind.App., 590 N.E.2d 650, 651:

> Thus, it is clear, convictions on two or more counts of criminal conduct arising from "a single confrontation" per *Bowling*, the "same short span of time" per *Stwalley* and *Kizer*, and the defendant's "singular act" per *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, 1089, violate a sexual attacker's double jeopardy rights.

Accordingly, the seven counts of confinement should be vacated.