**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**LUKUMAN ADERIBIGBE**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 31 2012, 9:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LUKUMAN ADERBIGBE, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )   No. 49A04-1203-PC-219 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-0512-PC-219884

**October 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Lukuman Aderibigbe appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged a conviction for Class B felony criminal confinement. We affirm.

## Issue

The sole issue we address is whether Aderibigbe received ineffective assistance of trial and appellate counsel.

## Facts

On direct appeal, we related the underlying facts of this case as follows:

> On the evening of December 17, 2005, Temidayo Green was in his apartment with a friend, Romoni Sule. Aderibigbe knocked at the front door, and Sule went to answer it. However, after looking through the peephole, Sule decided not to let Aderibigbe in because Sule did not know him. Aderibigbe then addressed Green and Sule through the door in their native Nigerian dialect, claiming that he was "a brother to someone [Green] kn[e]w," that he was having a problem with his car, and that he needed help. When Green opened the door, Aderibigbe put on a ski mask and, pointing a gun at Green, rushed inside followed by an accomplice, Antonio McBrady, who also had a gun and ski mask. Aderibigbe hit Green in the back of the head with the gun and ordered him to face the wall and Sule to lie on the floor. They also hit Sule in the back of the head, and he began to bleed from the wound. Aderibigbe and McBrady told Green and Sule that they were going to kill them, put them in the trunk of a car, and take them to "God knows where."
>
> Aderibigbe and McBrady then moved Green and Sule to Green's bedroom. While McBrady held them at gunpoint, Aderibigbe ransacked the apartment. Aderibigbe loaded Green's possessions into Green's car. He took their wallets and debit cards and asked for their PIN numbers, threatening

2

to kill them if they lied. He disconnected Green's telephone and took Green's and Sule's cell phones. Aderibigbe then left the apartment with Sule to withdraw money from a nearby ATM machine, leaving McBrady behind to keep watch over Green. Aderibigbe and Sule then walked to three different banks, where Sule withdrew $200 from his own account. When they approached a "public place," Aderibigbe removed his ski mask.

In response to a suspicious persons dispatch, Deputy James Barrow pulled up behind Aderibigbe and Sule and activated his emergency lights. Deputy Barrow exited his patrol car, identified himself, and asked for their identifications. Aderibigbe "acted very nervous" and "kept looking around" and "putting his hand near his pocket." Concerned for his own safety, Deputy Barrow attempted to put Aderibigbe in handcuffs. When Deputy Steven Scott arrived to assist Deputy Barrow, Aderibigbe "took off running." Deputy Barrow pursued him on foot. Sule then informed Deputy Scott that Aderibigbe was armed and that Green was being held hostage back at the apartment. Deputy Scott notified Deputy Barrow on the radio that Aderibigbe was armed, and Deputy Barrow gave up his pursuit. The deputies called for back-up and headed to Green's apartment, where McBrady soon surrendered.

The State charged Aderibigbe with two counts of criminal confinement as class B felonies, robbery as a class B felony, two counts of battery as class C felonies, carrying a handgun without a license as a class A misdemeanor, resisting law enforcement as a class A misdemeanor, and carrying a handgun without a license as a class C felony. Following a jury trial, Aderibigbe was convicted of all charges except carrying a handgun without a license as a class C felony, which the State dismissed.

Aderibigbe v. State, No. 49A02-0611-CR-986, slip op. pp. 1-2 (Ind. Ct. App. Sept. 25, 2007) (citations omitted). On direct appeal, Aderibigbe's attorney only challenged the appropriateness of Aderibigbe's thirty-eight-year sentence and we affirmed the sentence. Id. at 3.

3

On April 21, 2008, Aderibigbe filed a pro se PCR petition, which he amended on June 13, 2011. The petition challenged only one of Aderibigbe's convictions for Class B felony criminal confinement, specifically the count that pertained to the confinement of Temidayo Green. Aderibigbe contended that he had been improperly convicted of confining Green by removing him from one place to another, when the charging information alleged that Aderibigbe confined Green without his consent by holding him at gunpoint. On January 12, 2012, the post-conviction court denied Aderibigbe's petition. Aderibigbe now appeals.

**Analysis**

PCR proceedings are civil in nature, and a defendant bears the burden of establishing his or her claims by a preponderance of the evidence. Smith v. State, 822 N.E.2d 193, 198 (Ind. Ct. App. 2005), trans. denied. A defendant appealing the denial of a PCR petition is challenging a negative judgment. Id. Thus, to the extent this appeal turns on factual issues, Aderibigbe must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court. See id. "In other words, the defendant must convince this court that there is no way within the law that the court below could have reached the decision it did." Id. We will not defer to the PCR court's legal conclusions, but we do accept its factual findings unless they are "clearly erroneous." Id.

We first note that Aderibigbe raises a freestanding claim of reversible error. Freestanding claims of error are not cognizable in post-conviction proceedings. Sanders

v. State, 765 N.E.2d 591, 592 (Ind. 2002). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." Id. Because there is no claim by Aderibigbe that his challenge to his confinement conviction was "demonstrably unavailable" before, we will only address his argument that he received ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben–Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied. An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006).

Although Aderibigbe asserts that both his trial and appellate attorneys were ineffective, he fails to specify how his trial attorney was ineffective. Thus, we will focus our attention on whether his appellate attorney was ineffective for failing to challenge

5

one of his confinement convictions on direct appeal. There are three basic categories of ineffective assistance of appellate counsel claims: (1) denial of access to an appeal; (2) waiver of issues for failing to raise them on direct appeal; and (3) failure to present issues well. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). Aderibigbe's claim falls into the second category. To prove such a claim, "the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." Id. In evaluating the performance prong when counsel waived issues upon appeal, we must determine: (1) whether the unraised issue is significant and obvious from the face of the record and (2) whether the unraised issue is "clearly stronger" than the raised issues. Id. If this analysis demonstrates deficient performance, then we examine whether prejudice occurred. Id. The test of prejudice when appellate counsel was deficient for failing to raise an issue is whether that issue clearly would have been more likely to result in reversal or an order for a new trial than the issue or issues that appellate counsel actually did raise. Id.

Indiana Code Section 35-42-3-3(a) provides that a "person who knowingly or intentionally: (1) confines another person without the other person's consent; or (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another . . . commits criminal confinement." In Addis v. State, 404 N.E.2d 59, 61 (Ind. Ct. App. 1980), this court held that subsections (1) and (2) of the criminal confinement statute "embrac[ed] two distinct types of criminal confinement by encompassing both the concept of restraint in place and removal." Moreover, we

6

concluded that the two subsections "present two separate crimes," stating that lack of consent is an element of confinement under subsection (1) but not subsection (2). Id. Although not raised by the defendant in her brief, we reversed her conviction as fundamentally erroneous where the State had explicitly charged the defendant with violating subsection (1) of the confinement statute but the evidence could only have supported a conviction under subsection (2). Id. at 64.

Our supreme court approved of Addis in Kelly v. State, 535 N.E.2d 140 (Ind. 1989). There, the court reversed the defendant's confinement conviction where he had been expressly charged with confining a person without his consent, but the jury was instructed that it could convict the defendant if there was proof that he had removed the victim from one place to another by fraud, enticement, force, or threat of force. Kelly, 535 N.E.2d at 142. In other words, it was erroneous for the State to have charged the defendant under subsection (1) of the confinement statute but to ask the jury to convict him under subsection (2). Additionally, the instructional error was not harmless because there was evidence that would have supported convicting the defendant of either the uncharged offense under subsection (2) or the charged offense under subsection (1), and it was impossible to tell from the general verdict whether the jury convicted him under subsection (1) or (2). Id. at 143; but see id. at 143-44 (Pivarnik & Givan, JJ., dissenting) (disagreeing with majority that confinement statute describes two different criminal acts and that "it would be more accurate to say the statute describes one criminal act that can be performed in two different manners.").

7

Aderibigbe asserts that his case is similar to Addis and Kelly and, essentially, that appellate counsel should have brought that similarity to our attention on direct appeal. The charging information in this case alleged that Aderibigbe "did knowingly, while armed with a deadly weapon, that is: a handgun, confine Temidayo Green, without the consent of Temidayo Green, by holding Temidayo Green inside a house at gunpoint . . . ." App. p. 42. Thus, Aderibigbe was charged under subsection (1) of the confinement statute, i.e. "non-consensual" confinement. The facts as related in our opinion on direct appeal support a conviction under that subsection, in particular, the evidence that Aderibigbe hit Green on the back of the head with a gun and then ordered him to face the wall.[1] See Austin v. State, 603 N.E.2d 169, 172 (Ind. Ct. App. 1992) (holding evidence that defendant ordered victims to remain still after breaking into apartment sufficient to support confinement convictions), trans. denied. Because there was in fact evidence sufficient to convict Aderibigbe of "non-consensual" confinement, it is distinguishable from Addis, where we concluded there was in fact only sufficient evidence to convict the defendant of the uncharged "removal" confinement and no evidence that she had committed the charged "non-consensual" confinement. Appellate counsel was not ineffective for failing to raise Addis on direct appeal.

The State admits, however, there was evidence that could have supported a conviction under subsection (2), i.e. "removal" confinement, when Aderibigbe ordered

---

[1] Aderibigbe also could have been deemed an accomplice to McBrady's holding of Green in the bedroom at gunpoint while Aderibigbe ransacked the apartment, which would have been a subsection (1) confinement.

8

Green to move to the bedroom. The facts of this case, therefore, are facially similar to Kelly. Regardless, Aderibigbe has not met his burden of establishing that appellate counsel was ineffective for failing to raise this issue on direct appeal. Most importantly, Aderibigbe has not argued that the jury was improperly instructed that it could convict him of "removal" confinement of Green after he was charged only with "non-consensual" confinement of Green. That was the dispositive issue in Kelly, the fact that the jury was given the option of convicting the defendant of a crime with which he had never been charged. Nor has Aderibigbe argued or cited to any portion of the record[2] that the prosecutor improperly urged the jury to convict him of "removal" rather than "non-consensual" confinement of Green. In the absence of any evidence of improper argument by the prosecutor or improper jury instructions, we cannot conclude that appellate counsel made an unreasonable strategic decision in failing to raise an argument based on Kelly on direct appeal.

To the extent Aderibigbe suggests that it was improper for the State to introduce any evidence of Green's "removal" confinement when Aderibigbe was charged only with "non-consensual" confinement, we also reject this argument. Indiana Evidence Rule 404(b) does not prohibit the introduction of evidence of uncharged acts that are

---

[2] Aderibigbe did not provide a copy of the direct appeal record to the post-conviction court in support of his claims, even though our docket indicates that Aderibigbe had obtained a copy of that record. Although the post-conviction court "may" have taken judicial notice of that record, it was not required to do so. See Ind. Evidence Rule 201(b). Additionally, even though Aderibigbe has proceeded pro se, he is held to the same standard as trained counsel. See Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied.

9

"intrinsic" to the charged offense or offenses. Wages v. State, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007), trans. denied. "'Evidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted.'" Id. (quoting Bocko v. State, 769 N.E.2d 658, 664–65 (Ind. Ct. App. 2002), trans. denied.) Clearly, Green's removal to the bedroom was part and parcel of the crimes with which Aderibigbe was charged and prosecuted for; in fact, that removal could not have been more intrinsic to the full story of the crimes. As such, the evidence was admissible, and counsel had no basis upon which to challenge its admission.

**Conclusion**

Aderibigbe has not met his burden of establishing that he received ineffective assistance of counsel at trial or on direct appeal and, thus, the post-conviction court properly denied his PCR petition.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.